**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Renee Evers,<br><br>           Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-23-00918-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Jennifer Evers' ("Plaintiff") appeal from the Commissioner of Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed her opening brief on October 5, 2023, (Doc. 12), Defendant responded on January 2, 2024, (Doc. 16), and Plaintiff filed a reply on January 16, 2024, (Doc. 17). The Court now rules.

**I.  BACKGROUND**

The issues presented in this appeal are the following: (1) whether the ALJ erred in rejecting the assessment from independent examiner Dr. Svetlana Pedenko, M.D. ("Dr. Pedenko") without providing consistency and supportability analysis, and (2) whether the ALJ erred in rejecting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence, when determining Plaintiff's residual functional capacity ("RFC"). (Doc. 12 at 1–2).

    **A. Factual Overview**

Plaintiff applied for social security benefits on December 16, 2019, alleging

disability beginning on September 19, 2019. (Doc. 8-3 at 17). Plaintiff was denied benefits initially and on reconsideration. (*Id.*). Plaintiff subsequently requested a hearing and amended her alleged onset date to be April 1, 2020. (*Id.*). After the hearing, an administrative law judge ("ALJ") issued a decision finding Plaintiff not disabled from the alleged onset date, April 1, 2020, through the date of the ALJ's decision, February 15, 2022. (*Id.* at 32).

### B.  The SSA's Five-Step Evaluation

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

### C. The ALJ's Application of the Five-Step Evaluation Process

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 1, 2020, the amended onset date. (Doc. 8-3 at 19).

At step two, the ALJ found that through the date last insured, Plaintiff had the

following severe impairments: "morbid obesity, degenerative disc disease, fibromyalgia, thyroid disorder, Graves' disease, migraines, diabetes mellitus, depressive disorder, anxiety disorder, and posttraumatic stress disorder and obsessive-compulsive disorder. (*Id.* at 19–20).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.* at 20). Thus, the ALJ made an RFC determination and found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can perform work in an 8-hour workday with normal breaks. She can occasionally lift and or carry up to 20 pounds and frequently up to 10 pounds, stand and or walk about 6 hours total and sit about 6 hours total. She can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. She can frequently balance on level terrain and frequently stoop. She can occasionally kneel, crouch, or crawl. She must work in an environment where she has no more than frequent exposure to extreme cold, extreme heat, wetness, noise above a business office level, and no hazards like moving dangerous machinery and unprotected heights. Due to her mental health, medication side effects and other symptoms and limitations, she retains the ability to understand, remember, and apply information and maintain her concentration, persistence or pace regarding simple instructions.

(*Id.* at 24).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 30).

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 31). Specifically, the ALJ noted that Plaintiff could perform the requirements of occupations at the "light unskilled level," providing the following occupation examples from the vocational expert ("VE") testimony: information clerk, office helper, and mail room clerk. (*Id.* at 31–32). As such, the ALJ found that

Plaintiff was not under a disability during the relevant time period. (*Id.* at 32).

## II.      LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012).

On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III. DISCUSSION

#### A. Rejecting Plaintiff's Symptom Testimony

The Court first addresses Plaintiff's arguments regarding the ALJ's decision to discount Plaintiff's subjective testimony. Plaintiff argues that the ALJ's summary of the medical evidence "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] symptom testimony." (Doc. 12 at 16). Additionally, Plaintiff argues that "reliance on objective medical evidence by itself is not a specific, clear, and convincing reason to reject a claimant's symptom testimony." (*Id.* at 17). Plaintiff further asserts that, contrary to the ALJ's findings, the medical record does not support the notion that Plaintiff's objective findings had not changed. (*Id.*). Plaintiff argues that because Plaintiff's impairments were chronic, not acute, evidence of stabilization with conservative treatment does not support the ALJ's decision to discount Plaintiff's testimony. (*Id.* at 18). Plaintiff also asserts that any improvement she experienced with pain management "must be viewed in the broader context of the impairments and the record." (*Id.*). Finally, Plaintiff argues that the treatments she received were indeed not conservative treatment and thus provide support for the credibility of her testimony. (*Id.* at 19–20).

Defendant argues that as for Plaintiff's mental impairments, "the ALJ considered the lack of treatment [and other inconsistent objective evidence] after her amended alleged onset date, but nevertheless accounted for her allegations in the RFC." (Doc. 16 at 6). As for Plaintiff's physical impairments, Defendant argues that the ALJ noted several examples

- 6 -

of Plaintiff's treatments being successful in managing her pain, as well as Plaintiff's failure to seek recommended specialist care and Plaintiff's daily activities that were inconsistent with debilitating impairments. (*Id.* at 7–8). Finally, Defendant argues that contrary to Plaintiff's allegations, the ALJ properly "summarized Plaintiff's allegations and then juxtaposed the examination findings that were not consistent with [her] subjective allegations," and also provided the above additional reasons, in discounting Plaintiff's subjective testimony. (*Id.* at 9).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)

(quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ analyzed several factors pertaining to Plaintiff's various impairments. The ALJ first noted the various activities of daily living inconsistent with the severity of Plaintiff's allegations: "attending to her personal care needs, preparing meals, performing household duties, watching TV, driving a car, shopping in stores, paying bills, talking on the phone, using the computer, performing hobbies, spending time with family, and taking care of others." (Doc. 8-3 at 25). The ALJ properly noted these inconsistencies as relevant to the inquiry into whether Plaintiff's symptom testimony was exaggerated, as evidence of daily activities is an enumerated factor for ALJs to consider. Moreover, an ALJ need not cite to daily activities commensurate with the rigors of a full workday for the daily activities to be a relevant factor; such evidence is relevant to whether a plaintiff's symptom testimony may be exaggerated. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (approving of the ALJ's recognition that evidence of daily activities "did suggest that [the plaintiff's] later claims about the severity of his limitations were exaggerated"). As such, the Court finds the ALJ properly considered activities of daily living as a factor.

The ALJ next addressed Plaintiff's degenerative disc disease in particular, acknowledging objective evidence indicating an impairment but noting multiple instances in which treatment was effective, such as the following: (1) that Plaintiff showed improvement, complaining of only mild pain and difficulty at her last physical therapy appointment, and (2) that Plaintiff experienced a 40 percent reduction in pain after her first epidural steroid and an 80 percent reduction in pain with subsequent injections. (Doc. 8-3 at 25). The Court finds that evidence of effective medical treatment is a clear and convincing reason to discount a claimant's testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ next discussed Plaintiff's Graves' disease and ongoing thyroid issues. The ALJ pointed out that Plaintiff underwent a total thyroidectomy, was subsequently

diagnosed with postsurgical hypothyroidism, and was recommended "conservative treatment measures, such as diet, exercise and weight loss."[1] (Doc. 8-3 at 25–26). The ALJ then stated that "[f]ollow-up care was largely uneventful," as "[e]ven though [Plaintiff] continued to complaint of fatigue and other symptoms, there were not major interval illnesses requiring hospitalizations, and no particular patient concerns through September 2021." (*Id.* at 26). The Court thus finds the ALJ properly noted inconsistencies between Plaintiff's subjective complaints and the objective medical evidence, as well as effective and conservative treatment, and as such, the ALJ has provided clear and convincing reasons as to this impairment. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (holding that an ALJ properly discounts a claimant's subjective testimony in light of the claimant's "generally conservative treatment").

The ALJ then turned to Plaintiff's diabetes mellitus, noting her diabetes had increased around 2018, she was treated with beta blocker and receptor blockers with good compliance, and she had complained of burning pain in her extremities. (*Id.*). The ALJ further noted, however, that a recent EMG was inconclusive as to a cause for her pain and that "[Plaintiff's] treatment in general was unremarkable, with no complications and no real interval change during the period at issue," citing to various documents in the medical record.[2] (*Id.*). The Court thus finds that the ALJ properly discounted the severity of Plaintiff's testimony based on inconsistencies with objective evidence and evidence of effective treatment.

The ALJ next discussed Plaintiff's migraines, noting that Plaintiff was seen for headaches that she alleged were worsening over the prior five years, but then pointing out that although Plaintiff was referred to a headache specialist, "there are no follow-up records to confirm she saw this specialist," and that Plaintiff "did not list any specific medications that she took for migraines." (Doc. 8-3 at 26). The Court finds that the ALJ properly relied

---

[1] The Court emphasizes that these treatment measures are indeed conservative. *See, e.g.*, *Chappelle v. Berryhill*, No. 6:16-cv-00444-SB, 2017 WL 2399581, at *8 (D. Or. June 2, 2017) (explaining that diet, exercise, and weight loss are conservative treatment measures).
[2] After examining the records to which the ALJ cites, the Court notes that the ALJ's statements accurately characterize the records, taking into account the ALJ's discussion of both the thyroidectomy and the diabetes mellitus.

on unexplained failure to seek or follow a course of treatment in discounting the severity of Plaintiff's alleged symptoms. *See Tommasetti*, 533 F.3d at 1039 (unexplained or inadequately explained failure to follow a course of treatment is a proper factor in evaluating a claimant's testimony).

The ALJ also addressed Plaintiff's mental impairments separately, noting first that Plaintiff "received most of her mental health treatment . . . prior to the amended onset date." (Doc. 8-3 at 27). The ALJ nonetheless acknowledged evidence in the record from prior to the onset date, noting that Plaintiff "presented as alert and oriented," "engaged well," and "answered all questions asked of her." (*Id.*). The ALJ further noted that since the amended onset date, Plaintiff "does not appear to have continued with [her] therapy," that treatment records showed her condition to be stable,[3] and that Plaintiff "was not taking any antidepressants or other psychotropic medications to manage her mental health symptoms." (*Id.* at 28). Finally, the ALJ cited the following evidence from Plaintiff's consultative examination with a psychological consultant: (1) signs of discomfort "disappeared during the interview," (2) there was "no sign of fatigue or sleepiness, and nothing suggestive of mania or hypomania," and (3) the psychological consultant did not diagnose Plaintiff with a specific psychological disorder. (*Id.*). Considering the foregoing analysis, the Court finds that the ALJ properly discounted the severity of Plaintiff's subjective allegations based on an unexplained failure to follow a course of treatment, as well as inconsistencies with the objective medical evidence.

Accordingly, the Court finds that the ALJ properly relied on the following factors when analyzing Plaintiff's testimony and ultimately adjusting Plaintiff's RFC accordingly: (1) activities of daily living, (2) evidence of effective treatment, (3) evidence of generally conservative treatment, (4) unexplained or inadequately explained failure to follow a

---

[3] The Court acknowledges Plaintiff's argument that a condition can be stable but still disabling. However, the Court finds that in this particular case, the ALJ pointed to other clear and convincing reasons to discount Plaintiff's testimony such that the ALJ drew a reasonable inference that in Plaintiff's case, her "stable" condition supported a finding of no disability. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."

course of treatment, and (5) inconsistencies between Plaintiff's testimony and the objective medical evidence.[4] As for Plaintiff's argument that the ALJ must view improvement in the broader context of the record as a whole, the Court finds that based on the ALJ's lengthy and holistic discussion of the record—which the Court has merely summarized, omitting many details, here—the ALJ indeed considered improvements in light of the record as a whole, and it is not this Court's role to reweigh the evidence. The Court thus concludes that the ALJ has not committed reversible error on this ground.

### B. Rejecting Dr. Pedenko's Opinion

Plaintiff argues that the ALJ erred in rejecting Dr. Pedenko's opinion because the ALJ "did not explain how the ALJ's cited records were inconsistent with Dr. Pedenko's assessments." (Doc. 12 at 11). Plaintiff further asserts that the ALJ's citations to the medical evidence do not support inconsistencies between Dr. Pedenko's assessment and the evidence; namely, Plaintiff states that the ALJ cited to only three relevant pieces of medical evidence pertaining to Plaintiff's chronic back pain, and that none of the three are inconsistent with Dr. Pedenko's assessment. (*Id.* at 12). Moreover, Plaintiff argues, the ALJ failed to cite to "significant relevant evidence of lumbar spine MRIs, which supported Dr. Pedenko's assessed limitations." (*Id.* at 13). Plaintiff also asserts that Dr. Pedenko's mention of Plaintiff's limitations existing outside the relevant time period should not have been a reason to reject Dr. Pedenko's opinion. (*Id.* at 14). Finally, Plaintiff argues that the ALJ improperly relied on state agency non-examiners and a state agency examining doctor instead of Dr. Pedenko based on the same objectionable evidence from the medical record. (*Id.*).

Defendant argues that the ALJ reasonably considered Dr. Pedenko's opinion for several reasons. As for supportability, Defendant argues that the ALJ noted that Dr. Pedenko "observed that Plaintiff was oriented to time, place, and person, had lost weight, was able to ambulate independently, . . . and her upper extremities had normal strength and

---

[4] As such, Plaintiff's arguments to the effect that the ALJ relied solely on inconsistencies between Plaintiff's testimony and the medical evidence are unavailing. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis or rejecting the claimant's subjective testimony.").

range of motion," contrary to the extreme limitations Dr. Pedenko suggested. (Doc. 16 at 3). As for consistency, Defendant points out that the ALJ found that Plaintiff's "'overall treatment records' were inconsistent with Dr. Pedenko's other extreme limitations," referencing exhibits previously discussed in her opinion. (*Id.* at 4). Defendant also asserts that "the ALJ referenced repeated observations of Plaintiff with a normal gait by several of her providers," as well as successful thyroid surgery and Plaintiff's ability to manage her diabetes with treatment. (*Id.*).

As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. *See* 20 C.F.R. § 404.1520c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Instead, the ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* § 404.1520c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* § 404.1520c(b)(2). An ALJ will "articulate how [the ALJ] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* § 404.1520c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) .

. . will be." *Id.* § 404.1520c(c)(2).

Additionally, the ALJ does not need to weigh conclusions couched as medical opinions. "A statement by a medical source that [a claimant] is 'disabled' or 'unable to work'" is not a medical opinion. 20 C.F.R. § 404.1527(d)(1). These are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination or decision of disability." *Id.* § 404.1527(d).

Here, the ALJ provided the following supportability and consistency analysis after discussing Dr. Pedenko's findings:

> Although supported by firsthand examination, the limitations given are inconsistent with the examination itself, as well as the overall treatment records (Ex. B11F, B30F/9, 17-19, B34F/1, B35F/1, 6, B36F/1, 3, 7, B38F/1-10, B41F/1-3, B44F/3-7, B49F/1-6). Finally, the opinion that the claimant's symptoms were present as of 2019 is unsupported, as Dr. Pedenko never saw the claimant prior to this date (Ex. B50F/9).

(Doc. 8-3 at 30).

The Court first addresses Plaintiff's argument that Dr. Pedenko's opinion should not be completely invalidated merely because part of Dr. Pedenko's opinion pertained to a time period prior to the date Dr. Pedenko first examined Plaintiff. The Court agrees with Plaintiff to the extent that the remainder of Dr. Pedenko's opinion is not automatically invalid. However, the ALJ properly found any opinions Dr. Pedenko rendered about a time period in which Dr. Pedenko had not yet examined Plaintiff to be unsupported. Moreover, the SSA's regulations enable ALJs to consider factors other than those explicitly listed. 20 C.F.R. § 404.1520c(c)(5). As such, the Court finds no reversible error in the ALJ's consideration of a physician's willingness to opine on a time period at least two years prior to the first time the physician ever examined a patient as a factor in finding the opinion generally less persuasive, particularly in light of other discussions below.

Regarding the remainder of the ALJ's analysis of Dr. Pedenko's opinion, Plaintiff argues that Dr. Pedenko's opinion pertained specifically to Plaintiff's degenerative disc

disease and chronic pain, but that only three of the ALJ's citations to the record pertain to these impairments. Thus, Plaintiff argues that only these three citations are relevant to discredit Dr. Pedenko's opinion as being inconsistent. Plaintiff states that these three citations do not show inconsistencies between Dr. Pedenko's opinion and the medical record. The Court addresses each citation in depth.

The first record Plaintiff discusses is a medical record for an examination conducted by a physician on March 10, 2020. (*See* Doc. 8-9 at 176–84). The Court concludes that the examination is inconsistent with Dr. Pedenko's opinion. For example, the physician observed that Plaintiff's thoracic muscle bulk was normal without atrophy or spasms, Plaintiff had normal muscle bulk and strength in the lower extremities, and that Plaintiff's gait and station were normal. (*Id.* at 178–80). Moreover, although the physician acknowledged Plaintiff's subjective complaints of pain, the physician nonetheless opined that Plaintiff could stand and/or walk for 6–8 hours in an 8-hour day, had no limitations on sitting, and could frequently perform various work-related activities such as climbing, balancing, and stooping. (*Id.* at 182–83). The Court thus concludes that the physician's opinion shows inconsistencies between Dr. Pedenko's opinion and the other opinions of record.

Plaintiff next addresses records from treatments with the Pain Center of AZ for back pain in 2021. (*See* Doc. 9-6 at 2–7). Plaintiff references just the record from November 8, 2021, in which Plaintiff complained of increased pain in her low back, and the examining physician assessed Plaintiff's chronic pain syndrome as unchanged. (*Id.* at 3, 5). However, the ALJ also cited to a December 2, 2021, visit in which the physician noted that Plaintiff received a radiofrequency ablation for her back, tolerated the procedure well, and reported 80% pain relief. (*Id.* at 2–3). The Court finds that this citation indeed demonstrates inconsistencies between Dr. Pedenko's opinion and the medical record.

Finally, Plaintiff raises the ALJ's citation to records from an EMG nerve test of Plaintiff's lower extremities conducted on April 8, 2020. (*See* Doc. 9-1 at 85–87). The treatment notes state that left and right tibial motor nerves showed reduced amplitude and

left and right aural sensory nerves showed no response, but that all other nerves were normal. (*Id.* at 85). The notes further stated that right anterior tibialis and med gastric muscles showed increased spontaneous activity, but that all other muscles "showed no evidence of electrical instability." (*Id.*). The Court finds that this record shows inconsistencies between Dr. Pedenko's opinion and the medical record as a whole.

Upon examination of the other medical records to which the ALJ cited, the Court also notes that some other records indeed are from the proper time period, are relevant to Plaintiff's allegations of low back pain, and provide evidence that Dr. Pedenko's opinion on Plaintiff's low back was inconsistent with the record as a whole. For example, the ALJ cited to physicians' notes from examinations on October 22, 2020, and September 23, 2020, respectively, in which the physician noted that Plaintiff had a "normal gait," and her muscles had a "normal overall tone." (Doc. 9-2 at 72, 76). Additionally, the ALJ cited to records from a physician's examination on October 30, 2021, in which the physician noted that Plaintiff denied having the following ailments: back problems, joint stiffness, muscle aches, painful joints, and swollen joints. (Doc. 9-4 at 23).

As for the ALJ's observed inconsistencies between Dr. Pedenko's objective examination and ultimate conclusions, the Court notes the following from Dr. Pedenko's report: moderate edema in legs, ankles, and feet; peripheral pulses slightly diminished at the ankles; full range of motion in the upper body and approximately half range of motion on average in lower body with moderate pain; good extremity strength in upper and lower extremities[5]; significant tenderness to palpation in the mid back and lumbar spine. (Doc. 9-7 at 36–38). Although Dr. Pedenko's examination is consistent with some level of impairment, the ALJ reasonably concluded that it was inconsistent with the completely disabling impairment of which Dr. Pedenko ultimately opined.[6]

---

[5] Dr. Pedenko reported a strength grading of 4+ for both upper and lower extremities. A grading of 4 represents "[m]uscle activation against some resistance, full range of motion." *Muscle Strength Grading*, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK436008/.

[6] The Court also notes that Dr. Pedenko's opinion that Plaintiff "is unable of completing an 8-hour day or a 40-hour work week in any capacity" is more akin to a legal conclusion of disability, which is reserved for the SSA. 20 C.F.R. § 404.1527(d)(1).

As such, the Court finds that the ALJ appropriately discussed supportability and consistency and considered the additional factor of Dr. Pedenko's opinion on a time period well before Dr. Pedenko had examined Plaintiff. The Court therefore finds no reversible error on this basis.

**IV.     CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 26th day of February, 2024.

James A. Teilborg
Senior United States District Judge